```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA


LISA SALVAGGIO and                            CIVIL ACTION
JOSEPH SALVAGGIO

v.                                            NO. 06-5624

SAFECO PROPERTY & CASUALTY INSURANCE          SECTION "F"
COMPANIES, GENERAL INSURANCE COMPANIES
OF AMERICA, RIMKUS CONSULTING GROUP OF LOUISIANA,
FINANCIAL INSURANCE CONSULTANTS, L.L.C., and ABC
INSURANCE COMPANY
```

ORDER AND REASONS

Before the Court is plaintiff's motion to remand. For the reasons that follow, the motion is GRANTED.

Background

Joseph and Lisa Salvaggio own two properties that were located near the north shore of Lake Ponchatrain in Slidell, Louisiana. Hurricane Katrina completely destroyed both properties. General Insurance Company of America ("GICA") insured the property for wind damage. GICA's causation expert, Rimkus Consulting Group of Louisiana, determined that the homes were destroyed by the storm surge and that this damage is excluded by the policy's water damage exclusion. The Salvaggios dispute the cause of loss and demand payment of the policy limits of $275,000. GICA has paid $10,718.

The Salvaggios sued GICA, Rimkus, and Financial Insurance Consultants, Inc. in state court on July 26, 2006 for, among other

1

things, breach of contract, negligence, and misrepresentation.[1]  In the state court petition, plaintiffs assert that Financial was their insurance agent who procured their policy.  (Plaintiffs further assert that they made a claim for wind damage and are not satisfied with Rimkus's determination that their property was destroyed by storm surge and not by wind damage.)

GICA removed this suit to federal court on August 30, 2006.  The Salvaggios now move to remand their case back to the 22nd Judicial District for the Parish of St. Tammany.  GICA opposes remand, asserting that federal jurisdiction is proper under diversity because the non-diverse defendant, Financial, was improperly joined to defeat diversity.  Alternatively, GICA contends that original federal subject matter jurisdiction is conferred by the Multiparty, Multiforum Trial Jurisdiction Act, 28 U.S.C. § 1369.

### I.   Standard for Remand

Although the plaintiffs challenge removal in this case, the removing defendants carry the burden of showing the propriety of this Court's removal jurisdiction.  See Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir.), cert. denied, 510 U.S. 868, 114 S. Ct. 192, 126 L.Ed.2d 150 (1993); Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988).  In addition, any ambiguities are

---

[1] Rimkus has not yet been served with the petition.  Safeco Property & Casualty Companies was also named in the state court petition.  However, it has not made an appearance.

construed against removal, Butler v. Polk, 592 F.2d 1293, 1296 (5th Cir. 1979), as the removal statute should be strictly construed in favor of remand. York v. Horizon Fed. Sav. and Loan Ass'n, 712 F. Supp. 85, 87 (E.D. La. 1989); see also Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941).

## II.   Diversity Jurisdiction

To exercise diversity jurisdiction, complete diversity must exist between the plaintiffs and all of the properly joined defendants, and the amount in controversy must exceed $75,000. See 28 U.S.C. § 1332.

GICA contends that this Court has diversity jurisdiction over this suit because Financial, as an in-state defendant sharing the Salvaggios' Louisiana domicile, was improperly joined to defeat diversity jurisdiction.  The Court disagrees.  GICA has not discharged its heavy burden to show that the Salvaggios improperly joined Financial.

### A.   Improper Joinder Standard

A plaintiff may not join a defendant in a suit to defeat diversity jurisdiction unless the plaintiff has a viable claim against that defendant. When determining whether the plaintiff has a viable claim,"...the plaintiff's intent that the joinder" of a defendant "should defeat federal subject matter jurisdiction is immaterial to the propriety of the removal," so long as the claim against the party to be joined is "not merely colorable or made in

3

bad faith." 14C C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723, at 629-30 (3d ed. 1998). "The burden of proving a fraudulent joinder is a heavy one" that is borne by the removing party. Green v. Amerada Hess Corp., 707 F.2d 201, 205 (5th Cir. 1983).

"The removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in plaintiff's pleading of jurisdictional facts." B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981). "[F]raudulent joinder must be proved 'with particularity and supported by clear and convincing evidence' by the removing party." Doe v. Cutter Biological, 774 F. Supp. 1001, 1003 (E.D. La. 1991) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3723, at 343 (2 ed. 1985)). The Court, however, should not pretry the case. Carriere v. Sears, Roebuck and Co., 893 F.2d 98, 100 (5th Cir. 1990).

The Fifth Circuit has historically used different phrases in describing the standard for fraudulent joinder. Whether using the phrase "no possibility of recovery" or "reasonable basis for the plaintiff to establish liability", the essential standard has been the same. See Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003). In Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., the Fifth Circuit clarified the standard when it stated:

> [T]he court determines whether the party has any possibility of recovery against the party whose joinder is questioned. If there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This possibility, however, must be reasonable not merely theoretical.

313 F.3d 305, 312 (5th Cir. 2002)(internal citation and quotations omitted).

A full scale evidentiary hearing is improper for determining fraudulent joinder because the validity of the plaintiff's "claim against the in-state defendant(s) should be capable of summary determination." Green, 707 F.2d at 204. The scope of the inquiry for fraudulent joinder, however, may go beyond to pleadings to include summary judgment-type evidence. Travis, 326 F.3d at 648-49. Further, the resolution of ambiguities, whether in the relevant state law or in fact, are to be interpreted in favor of the party who is accused of improper joinder. Id. at 648.

The removing party bears a heavy burden to prove that the non-diverse defendant was improperly joined, see McDonal v. Abbott Labs., 408 F.3d 177, 183 (5th Cir. 2005) by showing either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Travis v. Irby, 326 F.3d 644, 647 (5th Cir. 2003) (citation omitted). If no reasonable basis of recovery exists, the Court may determine that the plaintiff's decision to join the local defendant was indeed

fraudulent, unless that showing compels dismissal of all defendants.  Id. (citation omitted).

### B. Application

The Salvaggios' motion for remand depends on whether GICA has shown that there is no reasonable basis for the Court to predict that the plaintiff might be able to recover against in-state defendant Financial.

"After all disputed questions of fact and all ambiguities in the controlling state law are resolved in favor of the non-removing party," the Fifth Circuit has held, "the court determines whether that party has any possibility of recovery against the party whose joinder is questioned." Carriere v. Sears, Roebuck & Co., 893 F.2d 98, 100 (5th Cir. 1990). In the state court petition, the Salvaggios assert that Financial was the insurance agent who procured their GICA insurance policy.  GICA disputes that Financial was the Salvaggios' insurance agent and instead contends that Financial procured the insurance policy for the mortgage holder, Bank of New Orleans.  Indeed, GICA also disputes that it had any insurance contract whatsoever with the Salvaggios.[2]

GICA refers to no case law whatsoever in support of its argument that Financial was improperly joined.  This hardly

---

[2] GICA avers that "the plaintiffs are not 'insureds under the policy and have no right to request coverage or policy limits, or for that matter, cancel the policy...[t]hese rights belong solely to BNO."

approximates the support required to discharge its heavy burden in persuading this Court of improper joinder. Moreover, improper joinder cannot exist as a matter of law if the defendant's showing that no reasonable basis for recovery exists against the in-state defendant "necessarily compels the same result for the non-resident defendant." See McDonal v. Abbott Labs., 408 F.3d 177, 183 (5th Cir. 2005) (quoting Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568 (5th Cir. 2004) (en banc)). "Said differently," the court of appeals clarified, "if the showing of no possibility of recovery against the local defendant applies equally to all defendants, a remand would be the appropriate disposition because the initial joinder would not have been improper." Id. at 184. Here, though a bit difficult to discern in its rather casual brief, GICA seems to suggest that the Salvaggios have no claim whatsoever, either against GICA or Financial, because they were not insured under the policy procured by Financial: GICA contends that Financial "was never their insurance agent and plaintiffs were never an 'insured' under the GICA policy." GICA says that the plaintiffs have no rights; rather, the rights under the insurance policy belong to Bank of New Orleans. Right or wrong, the Fifth Circuit has recently determined if GICA is urging that the Salvaggios cannot recover against the insurance agent because they are not parties to the insurance contract, then GICA must fail in its attempt to establish improper joinder. See id. (noting that "[a]s long as the

asserted defense applies uniformly to all defendants and dismisses the suit as a whole, the resident defendants were no more improperly joined than the non-resident defendants").

Furthermore, GICA would nonetheless fail to prove improper joinder because it has provided no competent evidence to contradict the plaintiffs' allegations.  The Court may "pierce the pleadings" and consider summary judgment-type evidence to determine whether the plaintiffs have a basis for their claim.  See Ross v. Citifinancial, Inc., 344 F.3d 458, 462-63 (5th Cir. 2003).  But there is no competent sworn evidence on this record.[3]  So it would be improper to shift the burden to plaintiffs based on GICA's

---

[3] GICA attaches to its opposition motion what purports to be the Portfolio Security Policy that provides certain coverage to properties secured by mortgages held by a lending institution where the borrowers or mortgagors fail to insure their property.  The Court acknowledges that the scope of the improper joinder inquiry may go beyond to pleadings to include summary judgment-type evidence (Travis, 326 F.3d at 648-49), but GICA's unsworn submission does not qualify.  Unsworn documents that are not properly authenticated are incompetent summary judgment evidence. See Fed.R.Civ.P. 56(e); see also Templet v. Hydrochem, Inc., 367 F.3d 473, 481 n.5 (5th Cir. 2004).  It is well-settled that "[t]o be admissible [as summary judgment evidence], documents must be authenticated by and attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."  10A Charles Alan Wright, et al., Federal Practice and Procedure § 2722, at 59-60 (2d ed. 1983) (footnotes omitted).  Accordingly, because it is incompetent summary judgment evidence, the Court cannot "pierce the pleadings" to determine whether the plaintiffs have a basis in fact for their claims. (The Court notes that it likewise disregards the plaintiffs' attempt to submit what purports to be a letter from Financial addressed to them in support of their allegation that Financial was their agent).

unsupported contradictory assertions.  <u>See</u> <u>id.</u> at 463.  Thus, resolving all questions of fact or ambiguities of law in favor of the plaintiffs, the Court finds that GICA has not shown that Financial was improperly joined.  Thus removal on the basis of diversity jurisdiction was improper.

   III.  <u>The Multiparty, Multiforum Trial Jurisdictional Act</u>

Having failed to carry its burden to convince the Court that Financial was fraudulently joined, GICA alternatively suggests that this Court has original subject matter jurisdiction over the suit pursuant to the Multiparty, Multiforum Trial Jurisdictional Act, 28 U.S.C. § 1369(a).  Section 1369(a) provides:

> The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location, if
> (1) a defendant resides in a State and a substantial part of the accident took place in another state or other location, regardless of whether that defendant is also a resident of the State where a substantial part of the accident took place;
> (2) any two defendants reside in different States, regardless of whether such defendants are also residents of the same State or States; or
> (3) substantial parts of the accident took place in different States.

If any plaintiff and any defendant are diverse, there is "minimal diversity."  28 U.S.C. § 1369(c)(1).  An "accident" is defined as "a sudden accident, or natural event culminating in an accident,

that results in death incurred at a discrete location by at least 75 natural persons." 28 U.S.C. § 1369(c)(4). The original jurisdiction conferred by this statute is limited by the abstention requirements in § 1369(b).

The Fifth Circuit notes that the Act's "ultimate goal" is consolidation, as the statute "was designed to ameliorate the restrictions on the exercise of federal jurisdiction that ultimately forced parties in multiple suits arising from the same disaster to litigate in several fora." Wallace v. Louisiana Citizens Property Ins. Corp., et al., 444 F.3d 697, 702 (5th Cir. 2006).

The Court agrees with the Salvaggios that the Act does not provide a basis for the Court to exercise jurisdiction over this case. The Court disagrees with GICA's characterization of Hurricane Katrina as an "accident" as defined by the Act. Obviously more than 75 people died as a result of the storm and its aftermath, but the deaths did not occur from a single accident attributable to the storm, or at a discrete location. The Court also rejects GICA's contention that the Fifth Circuit in Wallace already resolved the issue that, says GICA, "insurance litigation arising from Hurricane Katrina falls within the ambit of the MMTJA." (The Court invites GICA to revisit the Wallace opinion, which determined that the district court misapplied § 1369(b) mandatory abstention to the exercise of supplemental jurisdiction

established by 28 U.S.C. § 1441(e)(1)(B).  Contrary to GICA's suggestion, the Fifth Circuit never reached the conclusion that Hurricane Katrina qualifies as an "accident" under the Act.  See id. at 699.)

In fact, thus far, no court has concluded that Hurricane Katrina in and of itself was an accident.  See, e.g., Berry v. Allstate Ins. Co., No. 06-4922, 2006 WL 2710588 (E.D. La. Sept. 19, 2006) (Zainey, J.); Flint v. La. Farm Bureau Mut. Ins. Co., No. 06-2546, 2006 WL 2375593 (E.D. La. Aug. 15, 2006) (Duval, J.); So. Athletic Club, LLC v. Hanover Ins. Co., No. 06-2005, 2006 WL 2583406 (Sept. 6, 2006) (Lemmon, J.); Southall v. St. Paul Travelers Ins. Co., No. 06-3848, 2006 WL 2385365 (E.D. La. Aug. 16, 2006) (Barbier, J.).  The Court likewise declines to interpret the definition of "accident" so perversely so as to categorize Hurricane Katrina itself as a single accident where at least 75 people died at a discrete location.

Accordingly, the plaintiffs' motion to remand is GRANTED.  The case is hereby remanded to the 22nd Judicial District for the Parish of St. Tammany.

New Orleans, Louisiana, October 25, 2006.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE